IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE:

GEORGE A. NARDELLO,

                    Debtor.

GEORGE A. NARDELLO,

                    Appellant,

        v.

ISABEL C. BALBOA,

                    Appellee.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 13-6564 (JBS)

ON APPEAL FROM AN ORDER OF THE
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

[Case No. 12-36287 (GMB)]

**OPINION**

APPEARANCES:

Kenneth A. Sandler, Esq.
701 Westerly Drive
Marlton, NJ 08053
     Attorney for Appellant George A. Nardello

Isabel C. Balboa, Esq.
Raymond H. Shockley, Esq.
Office of the Chapter 13 Standing Trustee
Cherry Tree Corporate Center
535 Route 38, Suite 580
Cherry Hill, NJ 08002
     Attorneys for Appellee Isabel C. Balboa

**SIMANDLE, Chief Judge:**

I.    **INTRODUCTION**

     This action comes before the Court on George A. Nardello's

("Debtor" or "Appellant") appeal from Bankruptcy Case No. 12-

36287, in which the Bankruptcy Court issued an order on September 18, 2013 overruling Debtor's objection to the Trustee's Final Report and Account. The Order permitted Isabel C. Balboa ("Standing Trustee" or "Appellee") to take a percentage fee on all payments received and disbursements made in the case. For the following reasons, the Bankruptcy Court's order is affirmed. The Standing Trustee is entitled to the percentage fee permitted by the Bankruptcy Court.

## II.  BACKGROUND

On October 26, 2012, Debtor filed a petition under Chapter 13 of the Bankruptcy Code. On the same date, Isabel C. Balboa was appointed to serve as standing trustee in Debtor's Chapter 13 bankruptcy case. On November 7, 2012, Kenneth A. Sandler, Esq., entered his appearance on behalf of Debtor. On November 13, 2012, Wells Fargo, N.A. ("Wells Fargo") filed a motion for relief from automatic stay to permit Wells Fargo to repossess and sell Debtor's 2001 Carver yacht, and on November 19, 2012, Nathan and Darlene Supnick ("the Supnicks") filed a motion for approval of the sale of real estate in North Wildwood, New Jersey jointly owned by Debtor and the Supnicks. The Bankruptcy Court, after holding hearings regarding the value and conditions of the sale of the yacht, vacated the automatic stay by order entered March 6, 2013. The Court entered an order on November 27, 2012 authorizing the sale of the North Wildwood property and

2

ordering the proceeds to be held by the Standing Trustee pending further order of the court. Accordingly, the property was sold on December 12, 2012 and the Standing Trustee received payments of $147,076.57. By order entered January 15, 2013 and without any objection from Debtor, the Court authorized the Standing Trustee to pay the realtor, Joseph Iezzi, $18,375.00, and the Trustee disbursed the payment on January 17, 2013.

On December 10, 2012, Debtor filed his Plan, which proposed to make monthly payments of $360.80 for 60 months to the Standing Trustee. Such payments were to be funded by Debtor's future earnings and the sale of Debtor's yacht, which he valued at $225,000. Confirmation of the Plan was delayed due to a dispute over the value of the yacht, the Plan's omission of a debt owed to TD Bank, as well as the need to amend the Plan to address the Wildwood property proceeds.

On March 6, 2013, the Court directed the Trustee to distribute $64,350.78 to the Supnicks, which represented their one-half share in the net proceeds of the sale of the North Wildwood property, as well as $19,500.00 to the Supnicks "from the remaining proceeds of the sale which Debtor acknowledged as owing to said creditors for payment of Debtor's share of the mortgage on said property." [Bankr. Docket Item 96.]

On March 7, 2013, the Court entered an order allowing Debtor to voluntarily dismiss the case. Subsequently, Debtor's

3

counsel filed a fee application, and on March 20, 2013, the
Court entered an order approving a fee of $4,400.00 plus costs
of $146.78 to Debtor's attorney. An amended order dated April 3,
2013 required Debtor's counsel to return a check issued to him
by the Standing Trustee in the amount of $5,625.00, which
represented the remaining balance of the net proceeds from the
sale of the North Wildwood property. These proceeds were to be
paid by the Standing Trustee to the Supnicks' attorney, pending
resolution of a controversy regarding the remaining balance of
the net proceeds. The Standing Trustee issued a check to the
Supnicks' attorney on April 15, 2013.

On April 5, 2013, the remaining proceeds of the sale of the
North Wildwood property, a total of $25,308.94, were disbursed
to Debtor as a debtor refund following dismissal of the case on
March 7, 2013.

On May 7, 2013, the Standing Trustee filed a Final Report
and Account itemizing all payments received and disbursements
made by the Standing Trustee in the case. In the section titled
"Receipts," the Report identifies $147,437.29 as the "Total paid
by or on behalf of the debtor" and $25,308.94 as the "amount
refunded to debtor," thus yielding "net receipts" of
$122,128.35. In the section titled "Disbursements," the Report
identifies $122,128.35 as "Expenses of Administration" and $0.00
as "Disbursements to Creditors." The "Expenses of

4

Administration" section contains four line-items for the
$122,128.55: (1) $4,546.78 for "Attorney's Fees Paid Through the
Plan;" (2) $0.00 for "Court Costs;" (3) $9,730.79 for "Trustee
Expenses & Compensation;" and (4) $107,850.78 for "Other." The
Report also indicates a 6.6 percentage fee in the amount of
$9,730.79 to the Standing Trustee.

On May 31, 2013, Debtor filed an Objection to the Trustee's
Final Report and Account in which Debtor objected to the
Standing Trustee's percentage fee and argued that 11 U.S.C. §§
1326(a) and (b) do not provide for payment of a percentage fee
where the Debtor's case is dismissed prior to confirmation. On
June 25, 2013, the Bankruptcy Court heard oral argument on
Debtor's objection. Chief Judge Burns convened a telephone
conference on September 10, 2013, during which she announced her
decision in favor of the Standing Trustee and authorized the
percentage fee identified in the Final Report and Account. Chief
Judge Burns found 11 U.S.C. § 1326(a) inapplicable to Debtor's
case because the funds on which the Trustees percentage fee was
based were not payments proposed by the plan. (Sept. 10, 2013
Hr'g Tr. at 7:4-6; 9:21-24.) Instead, Judge Burns found that
that only 28 U.S.C. § 586(e) applies and she noted that the use
of the plural, "plans," indicates Congress' intent for the
section to apply to all plans, not just confirmed plans. (Id. at
10:2-3.) Judge Burns distinguished the instant action from cases

where no payments were made to creditors on the grounds that Debtor here consented to disbursement of funds to the Supnicks from the sale of the North Wildwood property prior to confirmation. (Id. at 7:7–8:6.) Moreover, Judge Burns emphasized that Debtor insisted that the proceeds from the sale be held by the Trustee and only agreed to disbursement to the Supnicks after a motion by the Supnicks' counsel.[1] (Id. at 9:12–20.) As such, Judge Burns found that Debtor "impliedly consented" to [the Trustee] receiving compensation, which could only be paid by way of a percentage fee." (Id. at 9:17–20.) Judge Burns also distinguished Section 1326(a) from Section 1226(a), pertaining to Chapter 12 cases, because Section 1226(a) refers to both payments and funds received by the Trustee. (Id. at 8:21–9:5.) Judge Burns concluded that "[t]he Trustee relied upon the Court

---

[1] The Court disagrees with Judge Burns' characterization of the record on this point. On November 20, 2012, the Supnicks filed a motion to approve the sale of the North Wildwood property and attached a proposed form of order stating that "[t]he title company shall hold all net proceeds until further Order of this Court." [Bankr. Docket Item 27-4.] The Standing Trustee filed a limited objection to the Supnicks' motion in which she requested that an amended order be submitted "stating all non-exempt proceeds be forwarded to the Trustee to be distributed as an additional base to unsecured creditors." [Bankr. Docket Item 34.] By Order entered November 27, 2012, the Bankruptcy Court granted the Supnicks' motion to approve the sale of the North Wildwood property and required the Standing Trustee to "hold all proceeds until further Order of this Court." [Bankr. Docket Item 37.] It appears from the record that it was the Standing Trustee, not the Debtor, who requested that the Trustee hold the proceeds from the sale. However, Debtor did not object to the Supnicks' motion to approve the sale of the property nor the Trustee's request to hold the proceeds.

orders to render service to the estate, and should not be
penalized now for performing those services which were
necessitated by the debtor's actions and consensual Court orders
in anticipation of a modified plan, which was to have been
provided by the debtor." (Id. at 10:17-22.)

On September 18, 2013, Chief Judge Burns entered an order
("September 18, 2013 Order") memorializing her decision
overruling Debtor's objection to the Trustee's Final Report and
Account. The September 18, 2013 Order constitutes a final order
of the Bankruptcy Court, and the debtor timely appealed. This
Court has jurisdiction to hear this appeal pursuant to 28 U.S.C.
§ 158(a)(1).

**III. STANDARD OF REVIEW**

Bankruptcy Rule 8013 provides that a district court "may
affirm, modify, or reverse a bankruptcy judge's judgment, order,
or decree or remand with instructions for further proceedings."
Fed. R. Bankr. P. 8013. The Rule further provides that
"[f]indings of fact, whether based on oral or documentary
evidence, shall not be set aside unless clearly erroneous, and
due regard shall be given to the opportunity of the bankruptcy
court to judge the credibility of the witnesses." Fed. R. Bankr.
P. 8013. Essentially, the district court must "review the
bankruptcy court's legal determinations de novo, its factual

findings for clear error and its exercise of discretion for abuse thereof." In re Am. Pad & Paper Co., 478 F.3d 546, 551 (3d Cir. 2007) (quotation omitted).

## IV. DISCUSSION

Appellant argues that the Bankruptcy Court erred as a matter of law in allowing the Standing Trustee to take a percentage fee on all monies received in a Chapter 13 case that was dismissed prior to confirmation. Appellant contends that without any plan confirmation, there could not have been any payments "under the plan" for the purposes of 28 U.S.C. § 586(e) and 11 U.S.C. § 1326(b). Even if Debtor's unconfirmed plan constituted a plan within the meaning of these statutes, Appellant argues that Debtor's plan only provided for two sources of payment: monthly payments of $360.80 and monies received from the sale of Debtor's yacht. Appellant emphasizes that the amounts distributed to the Supnicks for their share of the sale proceeds from the North Wildwood property cannot constitute a payment received under the plan because they were not Debtor's property nor part of Debtor's earnings. Additionally, Appellant notes that the Final Report and Account lists no payments to creditors.[2]

---

[2] However, Appellant acknowledges that "the only payment arguably made to a 'creditor' . . . herein was the $19,500.00 payment made to the Supnicks on the Proof of Claim in the amount of $25,275.00." (Reply Br. [Docket Item 11] at 3.)

Appellee responds that the Bankruptcy Court correctly concluded that the Standing Trustee was entitled to a percentage fee pursuant to 28 U.S.C. § 586(e) and that 11 U.S.C. § 1326 does not prohibit collection of a percentage fee in an unconfirmed case. Appellee contends that the relevant statutes make no distinction between confirmed and unconfirmed plans. Appellee further argues that the Bankruptcy Court was correct in allowing the Standing Trustee to collect a percentage fee from all monies received in a Chapter 13 case which was dismissed prior to confirmation. Finally, Appellee asserts that the Standing Trustee was entitled to a percentage fee on amounts disbursed to non-creditors.

This appeal raises two issues: (1) under Section 586, what amount is used to calculate the standing trustee's percentage fee; and (2) under Sections 586 and 1326, whether the standing trustee may collect a percentage fee in a Chapter 13 case dismissed prior to confirmation.

For the reasons discussed below, the Court finds no error in the Bankruptcy Court's interpretation of 28 U.S.C. § 586(e) and 11 U.S.C. § 1326. Therefore, the Court will affirm the Bankruptcy Court's order in Appellee's favor permitting the Standing Trustee to collect a percentage fee on all monies received in Debtor's Chapter 13 case even though it was dismissed prior to confirmation.

**A. The standing trustee's percentage fee is calculated on "all payments received" by the trustee, including the trustee's percentage fee**

The Court first addresses the appropriate amount to calculate the standing trustee's percentage fee under 28 U.S.C. § 586. Many courts have attempted to harmonize 28 U.S.C. § 586(e) and 11 U.S.C. § 1326 and reached different results. This issue requires statutory interpretation and the Court must begin with the plain language of Section 586. Rosano v. Twp. of Teaneck, 754 F.3d 177, 186 (3d Cir. 2014).

The role of the Standing Trustee is governed by Chapter 39 of Title 28. See 28 U.S.C. § 581, et seq. By order dated September 29, 1997, Attorney General Janet Reno appointed Isabel C. Balboa to serve as the standing trustee for the District of New Jersey. Ms. Balboa serves as standing trustee in all Chapter 13 cases filed in the Camden vicinage of the United States Bankruptcy Court for the District of New Jersey.

28 U.S.C. § 586 governs how the standing trustee is compensated. Section 586 directs the Attorney General to fix the annual salary of the standing Chapter 13 trustee and prescribe a percentage fee, not to exceed ten percent of all payments under Chapter 13 plans in which the trustee serves. 28 U.S.C. § 586(e)(1)(B). 28 U.S.C. § 586(e)(2) provides:

> Such individual shall collect such percentage fee from all payments received by such individual under plans in the

10

cases under chapter 12 or 13 of title 11 for which such
individual serves as standing trustee.

28 U.S.C. § 586(e)(2). The fees collected in excess of certain

amounts discussed in 28 U.S.C. § 586(e)(2) are to be paid to the

United States Trustee for deposit into the United States Trustee

System Fund. Id.

The Court finds Section 586 to be ambiguous because it does

not define "all payments received under plans." Especially when

viewed in conjunction with 11 U.S.C. §§ 1325 and 1326, it is

unclear whether "payments received" is coextensive with payments

to creditors and whether it includes amounts to cover the

percentage fee. Like many others before it, this Court has

reviewed the legislative history and found scant evidence of

legislative intent. See In re BDT Farms, Inc., 21 F.3d 1019,

1022-23 (10th Cir. 1994); Pelofsky v. Wallace, 102 F.3d 350,

354-55 (8th Cir. 1996); In re Jackson, 321 B.R. 94, 98 (Bankr.

S.D. Ga. 2005). See also 8 Collier on Bankruptcy ¶ 1302.05 (16th

ed.) ("Neither the Code nor its legislative history defines the

phrase 'all payments received under [chapter 13] plans.'").

Section 586 was promulgated as part of the Bankruptcy

Reform Act of 1978. As originally enacted, the statute provided

in pertinent part as follows:

(e)(1) The Attorney General, after consultation with a
United States trustee that has appointed an individual
under subsection (b) of this section to serve as standing
trustee in cases under chapter 13 of title 11, shall fix—

11

. . .
(b) a percentage fee, not to exceed ten percent, based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.
(2) Such individual shall collect such percentage fee from all payments under plans in the cases under chapter 13 of title 11 for which such individual serves as standing trustee.

Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978). Sections 586(e)(1)(B) and (e)(2) were amended to their present form as part of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554. Importantly, the language of Section 586(e)(2) as amended directs the fee to be collected from "all payments received by [the trustee] under plans" as opposed to "all payments under plans." The Court is unable to identify any legislative history associated with this change and finds little guidance in the related statutory provisions.

Courts are divided as to whether "all payments received" includes amounts intended for the standing trustee's percentage fee. See In re BDT Farms, 21 F.3d at 1023 (holding that standing trustee may collect percentage fee on all monies received from debtor, including trustee's fees); In re Acevedo, 497 B.R. 112, 119 (Bankr. D.N.M. 2013) (noting that Section 586(e)(2) directs trustee to collect percentage fee from all payments received, including the trustee's percentage fee); In re Jackson, 321 B.R. at 98-99 (holding that standing trustee may base percentage fee

12

on payments received from debtor rather than distributions made under the plan); In re Turner, 168 B.R. 882, 889 (Bankr. W.D. Tex. 1994) (reasoning that "payments received" under Section 586 must include amounts for trustee's percentage fee). But see Pelofsky, 102 F.3d at 356 (holding that trustee's fee is not a payment under a Chapter 13 plan); In re Edge, 122 B.R. 219, 221 (D. Vt. 1990) (holding that funds allocated for trustee's percentage fee are not payments under a Chapter 13 plan).

The Court finds that amounts received under plans refers to all monies received by the standing trustee, including the trustee's percentage fee. The plain language of Section 586 directs the standing trustee to collect a percentage fee based on "all payments received" by the trustee and this language makes payment of the percentage fee mandatory. Such an interpretation is consistent with the 1986 amendments, which directed the fee to be collected from "all payments received by [the trustee] under plans" as opposed to "all payments under plans." To give effect to this change, the Court must conclude that "all payments received" is not synonymous with "all payments under plans" and includes payments received by the standing trustee for the percentage fee.

The Court's interpretation is consistent with the Handbook for Chapter 13 Standing Trustee ("Handbook"). The Handbook, issued on December 1, 1998 and amended on July 3, 2012 by the

13

Executive Office for United States Trustees ("EOUST"),
"establishes or clarifies the position of the United States
Trustee Program (Program) on the duties owed by a standing
trustee to the debtors, creditors, other parties in interest,
and the United States Trustee." (Handbook for Chapter 13
Standing Trustees, at 1-1 (Oct. 1, 2012),
http://www.justice.gov/ust/eo/private_trustee/library/chapter13/
docs/handbook2012/Handbook_Ch13_Standing_Trustees_2012.pdf.)
Although the Court declines to afford Chevron deference to the
EOUST, the EOUST's interpretation is highly persuasive. See In
re Jackson, 321 B.R. at 97 (noting that the Handbook was not
subject to formal rulemaking as contemplated by Chevron, but
concluding that "if the question at issue is unanswered by the
plain language of the statute, the EOUST's interpretation may be
entitled considerable weight in the Court's analysis"). The
current version of the Handbook states, "The percentage fee is
applied to all payments received by the standing trustee under
the plan, including ongoing mortgage payments, unless otherwise
stated in the Director's notice fixing the percentage fee."[3] (Id.

_____

[3] Appellee relies on language from an earlier version of the
Handbook, effective December 1, 1998 and including the 2011
revisions, which states: "The percentage fee is applied to all
payments received by the standing trustee from the debtor under
the plan." (Handbook for Chapter 13 Standing Trustee, at 11-1,
(Dec. 1, 1998),
http://www.justice.gov/ust/eo/private_trustee/library/chapter13/
docs/handbook2010/Handbook_Ch13_Standing_Trustees.pdf.)

at 2-3.) The previous version of the Handbook, including the 2011 revisions, further explained the calculation of the trustee's percentage fee as follows: "Thus, on a $1,000 payment received from a debtor, a standing trustee whose percentage fee is 6% would pay $60 to the standing trustee's expense account and disburse $940 to creditors." (Handbook for Chapter 13 Standing Trustee, at 11-1, (Dec. 1, 1998), http://www.justice.gov/ust/eo/private_trustee/library/chapter13/docs/handbook2010/Handbook_Ch13_Standing_Trustees.pdf.) Therefore, the Handbook makes clear that "payments received" includes amounts intended for the percentage fee and forms the basis for calculating the percentage fee.

Further, interpreting Section 586 to include the trustee's percentage fee harmonizes the meaning of Section 586 with Section 1326. 11 U.S.C. § 1326 sets forth the procedure for payments and disbursements associated with Chapter 13 plans. 11 U.S.C. § 1326(a) provides:

> (a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount--
> (A) proposed by the plan to the trustee;
> . . .
> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the

15

trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

11 U.S.C. § 1326(a). 11 U.S.C. § 1326(b) provides:

(b) Before or at the time of each payment to creditors under the plan, there shall be paid--
(1) any unpaid claim of the kind specified in section 507(a)(2) of this title;
(2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28; . . .

11 U.S.C. § 1326(b). Section 1326(b) directs the percentage fee

to be paid at or before the time of "each payment to creditors

under the plan." As such, there is a clear distinction between

"payments received" by the trustee under plans in Section 586

and "payment to creditors under the plan" in Section 1326. As

the court in In re Acevedo noted, Section 1326, as originally

enacted, consisted only of what are now subparagraphs (b) and

(c). In re Acevedo, 497 B.R. at 121. Section 1326(a) was added

in 1984 to require debtors to make plan payments shortly after

the case was filed and before confirmation. The In re Acevedo

court acknowledged that "[i]t seems very unlikely Congress

intended to require that debtors make only partial payments,

i.e. the payments for the benefit of creditors but not the

trustee's fees" and thus concluded that the payments under

Section 1326(a)(1)(A) include amounts for the trustee's

percentage fee. Id. The Court agrees with this reasoning and

16

finds that a narrow reading of "all payments received," as Appellant asserts, would require the Court to ignore the clear distinction in Section 1326 between payments to creditors and the trustee's percentage fee, as well as the distinction between "all payments received" in Section 586 and "all payments under plans" in Section 1326.

The Court recognizes that other courts have taken a different view of these subtle statutory distinctions. For example, the courts in In re Edge and Pelofsky reasoned that to include payments for the trustee's percentage fee in "all payments received" under Section 586 would ignore the distinction evident in Section 1326 because the percentage fee is not a payment "under the plan". In re Edge, 122 B.R. at 222; Pelofsky, 102 F.3d at 356. However, the Court finds the reasoning of the Court in In re Turner more persuasive. In In re Turner, the court emphasized that under Section 1325(b), the standing trustee is authorized to insist that the debtor's entire payment be funded, "inclusive of the obligations imposed by section 1326(b), and not simply that distributions to creditors are funded." In re Turner, 168 B.R. at 889. Accordingly, the amounts received by the trustee under the plan are expected to cover both payments to creditors and the trustee's percentage fee. See In re Acevedo, 497 B.R. at 119 ("[O]rdinarily the only payments [the trustee] receives are the

17

monthly lump sum payments provided for in a debtor's proposed plan. Thus, payments under § 1326(a)(1)(A) necessarily include the amount for the trustee's fee."). Therefore, the Court concludes that Section 586 means what it says: the standing trustee's percentage fee is to be calculated based on all payments received by the trustee, including amounts intended to cover the trustee's percentage fee.

### B. The standing trustee is entitled to a percentage fee in Chapter 13 cases dismissed before confirmation

The Court now turns to the second issue: whether the standing trustee is entitled to a percentage fee on payments received in Chapter 13 cases dismissed before confirmation. As discussed above and as the Bankruptcy Court noted, although the plain language of 28 U.S.C. § 586 and 11 U.S.C. § 1326 is clear enough when read independently, ambiguity arises when they are read together. Section 586(e)(2) requires the award of a percentage fee, but is silent as to whether such a fee is mandatory in cases dismissed before confirmation. Section 1326(a)(2) requires the standing trustee to return certain funds to the debtor after certain deductions when a plan is dismissed before confirmation, but does not address amounts for the percentage fee.

The Court must attempt to read Sections 586 and 1326 harmoniously. The Court's conclusion above that Section 586

refers to all payments received by the standing trustee allows

such a harmonious reading. Accordingly, the Court finds that

Section 586 makes the percentage fee mandatory on all payments

received, including cases dismissed before confirmation.

> 11 U.S.C. § 1326(a)(2) provides:
>
> A payment made under paragraph (1)(A) shall be retained by
> the trustee until confirmation or denial of confirmation.
> If a plan is confirmed, the trustee shall distribute any
> such payment in accordance with the plan as soon as is
> practicable. If a plan is not confirmed, the trustee shall
> return any such payments not previously paid and not yet
> due and owing to creditors pursuant to paragraph (3) to the
> debtor, after deducting any unpaid claim allowed under
> section 503(b).

11 U.S.C. § 1326(a)(2). It is clear that the percentage fee is

distinct from payments to creditors and that Section 1326(a)(2)

is silent as to whether the trustee's percentage fee shall be

returned when a plan is unconfirmed. Because the percentage fee

is separate and apart from payments to creditors, Section

1326(a)(2) does not require that it be returned to the debtor.

Only Section 1326(b) addresses the trustee's percentage fee

and this subsection authorizes the payment of such a fee

"[b]efore or at the time of each payment to creditors under the

plan." 11 U.S.C. § 1326(b). In light of this language permitting

the payment of the percentage fee *before* payments to creditors,

the Court is unpersuaded by the argument that Section 1326(b)

only contemplates payment of the percentage fee where there is a

confirmed plan, as espoused in cases such as In re Acevedo, 497

B.R. at 121 ("Because the trustee will never pay creditors if no plan is confirmed, and § 1326(b) provides for payment of trustee fees *before* or [at] the time the trustee pays creditors, it follows that, if confirmation never happens, § 1326(b) does not contemplate payment of the trustee's percentage fee.") and In re Rivera, 268 B.R. 292, 294 (Bankr. D.N.M. 2001) ("To give full effect to all applicable provisions, 11 U.S.C. § 1326(b) seems to assume a prior confirmation.").

To the contrary, the provision in Section 1326(a) for payments prior to confirmation and explicit reference in Section 1326(b) to taking a percentage fee *before* or at the time of payments to creditors suggests that confirmation is not required. Further, Section 1326(a) does not require the return of amounts intended to cover the percentage fee. The reading proposed by Appellant, which would require the return of amounts for the percentage fee where plans are unconfirmed, renders the mandatory language in Section 586 meaningless. Even courts holding that the standing trustee is not entitled to a percentage fee in cases dismissed before confirmation have acknowledged that such an outcome requires a tortured reading of Section 586(e)(2). In re Acevedo, 497 B.R. at 124 ("The Court acknowledges that its method of harmonizing the statutes is not totally satisfying—it is based on a somewhat unnatural reading of the first sentence of § 586(e)(2).").

Moreover, the Court's interpretation is consistent with the statutory purpose of Section 586 and amendments thereto which changed language to "received" as opposed to "all payments under plans." It is unlikely that Congress added Section 1326(a) to require payments from Debtor prior to confirmation, but not to allow compensation to the standing trustee for services, particularly in circumstances, as here, where the standing trustee was required to hold certain funds. As noted by the In re Turner court, the percentage fee is best viewed as a user fee. In re Turner, 168 B.R. at 887 ("The trustee's fee in chapter 13 cases looks more like a 'user's fee' than anything else—and the user is the debtor. The trustee is obligated by a provision in title 28 to deduct the percentage fee from the total of all payments received in all cases he or she administers, with any excess (i.e., amounts exceeding what the statute permits standing trustees to be compensated) turned over to the United States Trustee, who then forwards the funds to the Attorney General, who in turn then reallocates the extra monies as she sees fit.").

Again, while the EOUST is not entitled to Chevron deference, its interpretation is persuasive. Appellee notes that, contemporaneous with the 2012 amendments to the Handbook, the Office of the United States Trustee announced a change in policy, effective October 1, 2012, regarding percentage fees

21

under 28 U.S.C. § 586, which made clear that a trustee could elect to earn a percentage fee on receipts in cases that are dismissed or converted to another chapter before confirmation. An email from the Executive Office for U.S. Trustees to Isabel C. Balboa states that "the standing trustee will earn the percentage fee when the debtor payment is received and take the fee upon disbursement." (Email from Martha K. Hallowell, Executive Office for U.S. Trustees, to Isabel C. Balboa [Docket Item 10-3] (July 20, 2012, 11:49 A.M.)) The policy change required any standing trustee who desired to earn a percentage fee on receipts in cases that dismiss or convert pre-confirmation to send the United States Trustee a letter stating their intention to collect such a percentage fee and stating that they will not receive any fees awarded under 11 U.S.C. § 503(b). See 11 U.S.C. § 503(b) (allowing for award of administrative expenses). The EOUST's current policy makes clear that standing trustees are entitled to percentage fees in cases dismissed before confirmation when, as here, the Trustee forgoes fees as administrative expense under Section 503(b).

Appellant argues that the Standing Trustee's compensation in this case is controlled by Section 1326 and that Section 1326(a)(2) does not provide for payment of the trustee's

percentage fee in unconfirmed cases.[4] However, the Court agrees with the Bankruptcy Court that Section 1326 is inapplicable and that Section 586 mandates payment of the percentage fee even in cases dismissed before confirmation. Appellant recognizes that his plan only provided for two sources of payment to the Trustee: (1) monthly payments of $360.80; and (2) monies received from the sale of Debtor's yacht.[5] As the Bankruptcy Court concluded, the payments upon which the Trustee calculated her percentage fee were not payments proposed under Debtor's plan and thus not controlled by Section 1326(a). Instead, receipts and disbursements related to the sale of the North Wildwood property totaling $147,076.57 occurred to avoid losing a prospective buyer and to benefit the estate. Delaying sale

---

[4] Appellant asserts that Section 1225(b)(2), in contrast to Section 1326(b)(2), directs the trustee to deduct a percentage fee before returning debtor's undisbursed payments when a plan is not confirmed. However, as the Bankruptcy Court noted, Section 1226(a) does not require the Chapter 12 debtor to make payments within 30 days as stated in Section 1326(a). Additionally, Section 1226(a) refers to both payments and funds received by the trustee unlike Section 1326(b)(2) which only refers to payments to creditors.

[5] Appellant relies on In re Grear, 163 B.R. 524 (Bankr. S.D. Ill. 1994) and In re Derickson, 226 B.R. 879 (Bankr. S.D. Ill. 1998), for the proposition that lump sum payments from the sale of property of the estate or debtor are not "payments received" by the trustee. However, both cases involved the transfer of collateral directly to creditors, a factual scenario distinct from Debtor's case where the Trustee actually received and held the proceeds from the sale of the North Wildwood property. It was also from this payment that the Trustee was directed to satisfy the Debtor's indebtedness to the Supnicks who had borne Debtor's share of the mortgage payments on the jointly-owned North Wildwood property.

23

until confirmation would have required amendment of the plan to address proceeds of the sale. Further, as Judge Burns observed, the Supnicks and the realtor could have been paid at closing without requiring administration by the Trustee, but the funds were held by the Trustee pending further review and not released until roughly three months after the sale of the property.[6] As such, the proceeds from the sale of the North Wildwood property

---

[6] Appellant contends that the Bankruptcy Court committed factual error in stating that the Debtor insisted that the funds be held by the Trustee. Although the Court disagrees with the Bankruptcy Court's characterization of the facts with regard to the proceeds of the sale, the Bankruptcy Court's treatment of this issue does not amount to factual error. On November 20, 2012, the Supnicks filed a motion to approve the sale of the North Wildwood property and attached a proposed form of order stating that "[t]he title company shall hold all net proceeds until further Order of this Court." [Bankr. Docket Item 27-4.] The Standing Trustee filed a limited objection to the Supnicks' motion in which she requested that an amended order be submitted "stating all non-exempt proceeds be forwarded to the Trustee to be distributed as an additional base to unsecured creditors." [Bankr. Docket Item 34.] By Order entered November 27, 2012, the Bankruptcy Court granted the Supnicks' motion to approve the sale of the North Wildwood property and required the Standing Trustee to "hold all proceeds until further Order of this Court." [Bankr. Docket Item 37.] The proceeds from the sale of the property were not released until March 6, 2013 upon motion by the Supnicks [Bankr. Docket Item 96], and the Bankruptcy Court's order requiring the proceeds to be held by the Standing Trustee was well within the court's discretion to protect the interests of the Debtor and his creditors. It is likely that this dispute could have been avoided if Debtor had included the proceeds from the sale of the North Wildwood property in his initial plan, since that property was, as all agree, a valuable asset. Moreover, the Court's analysis remains the same regardless of whether Debtor or the Standing Trustee requested that the Trustee hold the proceeds from the sale because it is the receipt of the proceeds that is relevant to the calculation of the Trustee's percentage fee, as explained above.

were "received" by the Trustee and properly formed the basis for calculating the Trustee's percentage fee. It is irrelevant that the Final Report and Account indicates that no payments were made to creditors because Section 586(e)(2) is directed to "all payments received" by the trustee, not payments to creditors.

The Court also rejects Appellant's argument that the Trustee was not entitled to a percentage fee on disbursements made to non-creditors, namely the Supnicks and the realtor.[7] Again, the Court finds the distinction between creditors and non-creditors to be irrelevant for the purposes of Section 586 because the statutory language is directed to "all payments received" without regard to creditors or non-creditors.

The cases relied on by Debtor, specifically In re Acevedo, In re Miranda, and In re Rivera are factually distinguishable because here the standing trustee was required to hold proceeds from the sale of the North Wildwood property even though these proceeds were not contemplated in Debtor's initial plan. Had the Standing Trustee not been required to hold the sale proceeds, there would be no justification for the percentage fee sought.

---

[7] Appellant concedes that a consensual payment of $19,500.00 was made to the Supnicks in their capacity as creditors, but argues that the Supnicks' portion of the proceeds from the sale of the North Wildwood property in the amount of $64,350.78 cannot be considered payments to creditors. However, Appellee notes that the Supnicks were treated as creditors throughout the proceedings. The Court need not determine whether the Supnicks were creditors because such a determination is not necessary for the Court's analysis.

However, Section 586 provides the sole mechanism for compensating the standing trustee, In re Rivera, 268 B.R. 292, 294 (Bankr. D.N.M. 2001), and the Bankruptcy Court properly noted that the Standing Trustee is entitled under the statute to compensation for the work she was required to perform.

Appellant also argues that the jointly owned North Wildwood property cannot be considered a payment received under Section 586 because it was not from Debtor's property or his Chapter 13 estate. As such, the $64,350.78 representing the Supnicks' proceeds from the sale were not payments "under the plan." The Court again concludes that the Standing Trustee was entitled to calculate her percentage fee based on "all payments received" regardless of the fact that Debtor was only entitled to half of the sale proceeds. It bears noting that the Trustee also disbursed an additional $19,500 to the Supnicks from the Debtor's proceeds, representing Debtor's share of the mortgage on the sold property. The Court agrees with the Bankruptcy Court that "[t]he Trustee relied upon the Court orders to render service to the estate, and should not be penalized now for performing those services which were necessitated by the debtor's actions and consensual Court orders in anticipation of a modified plan, which was to have been provided by the debtor." Further, the sale proceeds from the North Wildwood property are unlike direct payments to creditors which clearly are not

26

"payments received" by the trustee. See In re Wagner, 36 F.3d 723, 728 (8th Cir. 1994) ("We conclude that § 586(e)(2) means what it says and requires trustee's fees only on those payments 'received by' the trustee."). The Court concludes that the Bankruptcy Court's ruling gives full effect to Section 586 in permitting the Standing Trustee to collect a percentage fee on all payments received regardless of the Debtor's particular interest in the relevant property.

**V.    CONCLUSION**

For the foregoing reasons, the Court will affirm the Bankruptcy Court's September 18, 2013 Order. An accompanying Order will be entered.


**August 4, 2014**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge

27